# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| DOUGLAS TAYLOR and <br> TONYA TAYLOR, <br><br> Plaintiffs, <br><br> vs. <br><br> STRONGBUILT, INC., and <br> STRONGBUILT INTERNATIONAL, LLC., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) CIVIL ACTION NO. 09-0806-KD-C <br> ) <br> ) <br> ) <br> ) <br> ) |

## ORDER

This matter is before the Court on Plaintiffs Douglas and Tonya Taylor's motions for default judgment wherein they seek default judgment against Defendants StrongBuilt, Inc. (StrongBuilt) and StrongBuilt International, LLC, (SBI) for failure to plead or otherwise defend. (docs. 24, 38). The Clerk entered default as to both defendants (docs. 26, 36). An evidentiary hearing was held August 25, 2011. The Taylors appeared, testified as to their respective claims and damages and provided documentary evidence in support. Neither StrongBuilt nor SBI appeared at the hearing or otherwise defended the motions. Upon consideration, and for the reasons set forth herein, the motions for default judgment are GRANTED.

I. Procedural Background

In April 2008, defendants StrongBuilt and Wal-Mart Stores, Inc. removed the Taylors' complaint to this Court (doc. 1, Civil Action No. 08-188-KD-C). Wal-Mart Stores, Inc. was dismissed from this action (docs. 32, 33, Civil Action No. 08-188-KD-C). StrongBuilt filed a motion for summary judgment alleging that the Taylors' claims were barred by its Chapter 11 bankruptcy action which had been filed in 2003 in the United States Bankruptcy Court, Western District of Louisiana, Monroe Division, Case No. 03-31317 and closed March 14, 2006 (doc. 27, *Id*.). After briefing concluded, StrongBuilt filed a suggestion of bankruptcy as to its successor,

StrongBuilt International, LLC (doc. 49, *Id*.). This Court then referred this action to the Bankruptcy Court on finding that the Bankruptcy Court could best determine whether the Taylors' products liability claim against StrongBuilt had been discharged in its bankruptcy and whether liability for the claim has been assumed by SBI as the reorganized debtor (doc. 59).

The Bankruptcy Court entered a report and recommendation and lifted the automatic stay. The Western District of Louisiana then transferred this action back to this Court for final disposition (doc. 1, Civil Action No. 09-806-KD-C). In February 2010, this Court adopted the Bankruptcy Judge's report and recommendation and denied StrongBuilt's motion for summary judgment finding that the claim had not been discharged and that the Taylors may pursue their claim against SBI and StrongBuilt (doc. 12). The Taylors then filed their First Amended Complaint in this action to add SBI, the successor corporation, as a defendant (doc. 16). A preliminary scheduling order was entered and the deadline for the report of parties' planning meeting was extended twice (docs. 13, 18, 20).

In May 2010, counsel for StrongBuilt filed a motion to withdraw (doc. 21). The Magistrate Judge granted the motion and in that same order, scheduled a Rule 16(b) Scheduling Conference. Also, the Magistrate Judge warned StrongBuilt that it must appear through counsel at the conference and that failure to do so would subject it to appropriate sanctions, specifically those available under Fed. R. Civ. P. 37(b)(2)(A)(ii-vii) (doc. 22). Counsel also gave notice of the withdrawal to the corporate representative for StrongBuilt, Honda Killen, and gave notice that corporations could not proceed *pro se*[1] and therefore counsel should be obtained (doc. 23). StrongBuilt did not appear at the conference. Since May 2010, no attorney has appeared on behalf of StrongBuilt and it did not answer the First Amended Complaint.

In December 2010, the Taylors' filed their pending motion for default judgment as to

---

[1] "[A] corporation is an artificial entity that can act only through agents, cannot appear *pro se*, and must be represented by counsel." *Palazzo v. Gulf Oil Corp.*, 764 F. 2d 1381, 1385 (11th Cir. 1985) (citation omitted).

StrongBuilt and SBI (doc. 24).  As grounds, the Taylors' allege that the parties were ordered to appear for a Rule 16(b) Scheduling Conference but did not do so.  Construing the motion as an application for entry of default by the Clerk, default was entered as to StrongBuilt.  However, entry of default as to SBI was denied because there was a question of proper service of the summons and First Amended Complaint upon SBI (doc. 26).  After perfecting service upon SBI and its failure to answer the First Amended Complaint, the Taylors filed a second application for entry of default as to SBI (doc. 35).  The Clerk entered default as to SBI  in May 2011 (doc. 36).  In June 2011, the Taylors filed their pending motion for default judgment as to SBI for failure to plead or otherwise defend this action (doc. 38).

An evidentiary hearing on both motions was scheduled for August 25, 2011.  On July 11, 2011, notice of the hearing was mailed to the corporate representative (doc. 39).  SBI and StrongBuilt did not appear at the hearing or otherwise defend the motions.

In their First Amended Complaint, the Taylors' bring Count One for breach of implied warranty pursuant to Code of Alabama §§ 7-2-314, 7-2-315; Count Two pursuant to the Alabama Extended Manufacturer's Liability Doctrine; Count Three for negligence; Count Four for wantonness; and Count Five for damages for loss of consortium (doc. 16).  The Taylors seek compensatory and punitive damages.

II. Findings of Fact

Upon consideration of the pleadings and the evidence presented at the hearing, the Court makes the following findings of fact:

On or about January 1, 2005, Douglas Taylor purchased a StrongBuilt Renegade Fixed Deer Stand from WalMart Stores, Inc., which was manufactured by StrongBuilt (doc. 16, First Amended Complaint).

On or about December 18, 2005, after "having been mounted and connected as provided by the retailer WalMart, and the manufacturer, StrongBuilt", the tree stand "failed as the metal connection sheered off of the tree stand proximately resulting in . . . [Douglas] being catapulted

from the tree a distance of some thirty (30) feet." (doc. 16, p. 1-2). The tree stand was warranted and intended for "use as a tree stand capable of handling weight of two hundred fifty (250) pounds and represented to be capable of supporting" Douglas (*Id*.). When the tree stand reached Douglas, the "ultimate user or consumer", "it was without any substantial change in its condition from the time it was sold and manufactured by the Defendants." (doc. 16, p. 4).

Douglas sustained a "cervical neck fracture[2] as well as internal organ injuries" and "damage to his spinal cord", legs and feet" (doc. 16, p. 3). Douglas incurred medical expenses and will continue to incur such expenses in the future, was caused to lose wages and will continue to lose wages in the future, and suffered pain, severe mental anguish and emotional distress as a result of his injuries (*Id*.). Because of Douglas' injuries and consequent medical treatment, Tonya Taylor was caused to lose the consortium and society of Douglas. (*Id*., p. 8)

At the hearing, Douglas testified as follows: He has been married for seven years, is thirty-nine (39) years old, and works as a supervisor for a copier sales and repair company. He worked there before the accident and the company has made accommodations for his residual loss of function and absence from work for medical treatment and doctor appointments. Douglas anticipates that he would have to apply for disability if he lost this job because no other employer would accommodate his impairments.

Douglas bought the tree stand in 2005. When the stand collapsed, Douglas had disconnected the safety harness in order to exit the stand. He was turning to step down the ladder. When he took the first step, the stand collapsed and he fell approximately twenty to twenty-five feet landing on his feet. He was transported to the hunting camp, taken by ambulance to a local hospital where he was stabilized, and then transferred to the University of South Alabama Trauma Center where he was hospitalized for four days.

---

[2] Although the complaint indicates that Douglas Taylor had a cervical neck fracture, the medical records and testimony indicate a lumbar spine fracture.

Douglas was diagnosed with a fractured L-2 vertebrae, dislocated hip, broken ribs, and bruising damage to his internal organs. Douglas received physical therapy and rehabilitation and ultimately had back surgery which did not relieve the pain. Also, additional surgeries were necessary after the accident and jaw surgery is likely in the future because of medication side effects. He has lost about seven teeth in two years.

Douglas will be under the care of a pain management neurologist for the rest of his life and takes as much as twelve different medications on a daily basis. The medications have to be monitored and intermittently changed because they lose efficacy to treat his pain and there is potential for liver damage. He also has monthly medical appointments with his several treating physicians including twice monthly appointments with his neurologist. Douglas describes the pain as lasting twenty four hours and never completely stops. He sleeps two to three hours per night and has been counseled for living with chronic pain.

Before the fall, Douglas played softball, hunted, fished, and coached sports. He can no longer participate in these activities. Now he cannot drive long distances or sit for long periods of time. He cannot run, cannot lift more than fifteen pounds or stand longer than fifteen minutes and his walking is limited. One of his physicians has given him an impairment rating of 5% but there is some dispute among his doctors as to whether the rating should be higher. The medications affect his short term memory and therefore, his wife Tanya must accompany him to his medical appointments. Also, Douglas no longer handles the family finances, cannot help as much around the house, and can do only limited yard work.

At the hearing, Tanya Taylor testified as follows:

The Taylors have been married for seven years. His injuries and consequent pain have caused emotional stress and affected their marriage. He cannot help her with many routine household chores and their social activities are now limited. Tanya also worries about the long term effects of the many different medications upon Douglas. She handles all the household finances including the medical, dental, and prescription bills and worries about their out-of-

pocket expenses. As an example, Tanya testified that for Douglas to be treated by an in-network oral surgeon,[3] they must travel to Pensacola, Florida for appointments and surgeries in order to avoid the expense of out-of-network doctors. She works full time and uses her sick leave and vacation time to accompany Douglas to medical appointments.

In regard to his medical expenses, the Taylors presented a summary and supporting documents to show expenses incurred from the accident in December 2005 through 2008 in the amount of $58,520.60. They estimate that monthly medical expenses from 2009 to the present accrued at approximately $400.00 per month including $200.00 to $300.00 per month for prescription medicine and co-payments. The Taylors estimate that future medical expenses will continue to accrue at least at that same monthly rate of approximately $400.00.

In regard to his dental expenses, Douglas has lost seven teeth and is scheduled for jaw surgery in the near future. He has had several root canals at a cost to him of $200.00 to $300.00 out of pocket co-payments.

In regard to past lost wages, in 2006 Douglas was out of work for approximately four months. Based on an annual salary of about $47,000, Douglas estimates that he incurred lost wages of $15,666. Douglas also estimates future lost wages in the amount of $59,000 based upon a calculation of his age, salary and impairment rating.

Defendant StrongBuilt was ordered to appear with counsel for the Rule 16(b) Scheduling conference but failed to appear. After the conference, StrongBuilt did not appear through counsel or otherwise defend this action. StrongBuilt did not answer the First Amended Complaint. Defendant SBI was served with the First Amended Complaint which was amended to add it as a defendant. Defendant SBI did not appear or otherwise defend the First Amended Complaint.

---

[3] The numerous pain medications have adversely impacted Douglas' dental health.

IV. Conclusions of Law

Rule 55(b)(2) of the Federal Rules of Civil Procedure provides, in relevant part, as follows with regard to entering a default judgment:

(b) Entering a Default Judgment. * * *

(2) By the Court. In all other cases, the party must apply to the court for a default judgment. . . . If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals--preserving any federal statutory right to a jury trial--when, to enter or effectuate judgment, it needs to:

> (A) conduct an accounting;
>
> (B) determine the amount of damages;
>
> (C) establish the truth of any allegation by evidence; or
>
> (D) investigate any other matter.

Fed.R.Civ.P. 55(b)(2). Also, a "default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

Additionally, pursuant to Rule 37(b), of the Federal Rules of Civil Procedure, the Court may render a default judgment as a sanction against a party who disobeys or fails to comply with a discovery order of the court. Fed. R. Civ. P. 37(b)(2)(A)(vi).

The Court of Appeals for the Eleventh Circuit has held that although "a default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover, a defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact. The defendant, however, is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Tyco Fire & Sec., LLC v. Alcocer*, 218 Fed. Appx. 860, 863 (11th Cir. 2007) (per curiam) (citations and internal quotations omitted). Moreover, "before entering a default judgment for damages, the district court must ensure that the well-pleaded allegations of

7

the complaint ... actually state a cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." Id. (emphasis omitted). Therefore, plaintiffs must establish a "prima facie liability case" against the defendants. *Pitts ex rel. Pitts v. Seneca Sports, Inc.*, 321 F. Supp. 2d 1353, 1357 (S.D. Ga. 2004) (citations omitted). Also, when assessing default judgment damages, the Court has "an obligation to assure that there is a legitimate basis for any damage award it enters." *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2007). Additionally, "a motion for judgment by default is not granted as a matter of right. Rather, the court in its discretion may conduct a hearing requiring some proof from the [p]laintiff of the facts that must be established in order to determine [defendant's] liability". *Pitts ex rel. Pitts*, 321 F. Supp. 2d at 1358.

At the evidentiary hearing, the Taylors presented testimony and documentary evidence to establish liability and to support their claim of damages. StrongBuilt and SBI failed to appear at the hearing and failed to otherwise submit any evidence to dispute the Taylors' evidence. After consideration of the undisputed testimony and evidence, the Court finds the evidence sufficient under Alabama law to establish liability as to the Taylors' claims for breach of warranty and negligence but not as to violation of the Alabama Extended Manufacturer's Liability Doctrine, and wantonness.

  A. <u>Count One - Breach of implied warranty of fitness and merchantability</u>

The Taylors claim that StrongBuilt as the manufacturer of the fixed deer stand, and SBI as its successor, impliedly warranted that the stand was merchantable and fit for its intended purpose to be affixed to a tree and hold the weight of two hundred and fifty pounds and thus capable of supporting Douglas. They bring this claim pursuant to the Alabama Uniform Commercial Code sections 7-2-314 and 7-2-315.

Code of Alabama § 7-2-314, captioned "Implied warranty: Merchantability; usage of trade; human blood and tissues.", states in relevant part as follows:

> (1) Unless excluded or modified (Section 7-2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. . . .

Ala. Code 1975 § 7-2-314.

Code of Alabama § 7-2-315, captioned "Implied warranty: Fitness for particular purpose", sets forth as follows:

> Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under Section 7-2-316 an implied warranty that the goods shall be fit for such purpose.

Ala. Code 1975 § 7-2-315.

"The warranty of fitness for a particular purpose 'is implied if: (1) the seller has reason to know the buyer's particular purpose; (2) the seller has reason to know that the buyer is relying on the seller's skill or judgment to furnish the appropriate goods; and (3) the buyer, in fact, relied upon the seller's skill or judgment.'" *Tucker v. General Motors Corp.*, 769 So. 2d 895, 902 (Ala. Civ. App. 1998), *aff'd in part, rev'd in part*, *Ex parte General Motors Corp.*, 769 So.2d 903 (Ala.1999) (citations omitted). In order to establish a claim for breach of the implied warranty of merchantability, plaintiffs "must prove the existence of the implied warranty, a breach of that warranty, and damages proximately resulting from that breach." *Tucker*, 769 So. 2d at 901.

Although not a retail seller of the fixed deer stand, StrongBuilt and SBI as manufacturers and sellers to WalMart, are liable to the Taylors for breach of warranty based on Alabama Code § 7-2-318, captioned "Third-party beneficiaries of warranties express or implied.", which states as follows:

> A sellers' warranty, whether express or implied, extends to any natural person if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty. A seller may not exclude or limit the operation of this section.

Ala. Code. § 7-2-318.

The factual allegations, deemed admitted by the default, are that Douglas purchased from WalMart a "fixed deer stand" which had been manufactured and sold by StrongBuilt, that StrongBuilt was a merchant who sold that type of goods, and that StrongBuilt had reason to know that the purchasers of its stand would rely upon its skill and judgment to furnish suitable goods.[4] Thus, implied warranties were made to the Taylors as purchasers, that the fixed deer stand was merchantable and fit for use for the purpose of a stand which would support up to two hundred and fifty pounds.

The facts establish that Douglas used the fixed deer stand for its intended purpose and attached the stand to a tree, climbed into the stand, and that when he was exiting the stand, it "failed as the metal connection sheered off of the tree stand proximately resulting in . . . [Douglas] being catapulted from the tree a distance of some thirty (30) feet." (doc. 16, p. 1-2). At the hearing, Douglas testified as to more detail about the failure of the stand, explaining that he had disconnected his safety harness in order to climb down when the stand gave way, thus failing to support his weight, and caused his fall.

Under Alabama law,[5] the Taylors' must prove that the breach of these implied warranties was the proximate cause of their injuries. *Cain v. Sheraton Perimeter Park South Hotel*, 592 So.2d 218, 221 (Ala. 1991) ("Under . . . § 7-2-314, the defect or lack of merchantability, of course, must be proved to have been the proximate cause of the plaintiff's injuries."); *Chase v. Kawasaki Motors Corp., U.S.A.*, 140 F.Supp.2d 1280, 1289 (M.D. Ala. 2001) ("In an action for breach of the implied warranty of fitness for a particular purpose, the Plaintiffs must prove" damages proximately resulting from that breach.") (citation omitted).

---

[4] The First Amended Complaint specifically references Ala. Code § 7-2-314 and 7-2-315 (doc. 16, p. 2).

[5] "Subject matter jurisdiction in this case is based on diversity of citizenship. Thus, the forum state's substantive law applies . . ." *Reliable Tractor, Inc. v. John Deere Const. & Forestry Co.*, 376 Fed.Appx. 938, 941 (11th Cir. 2010).

Upon consideration of the facts alleged in the complaint and the testimony at the hearing, the Court finds that the fixed deer stand failed to perform its intended purpose, to hold weight less than two hundred and fifty pounds, and was not merchantable, and that failure proximately caused the injuries to Douglas.

B. Count Two - Alabama Extended Manufacturer's Liability Doctrine[6]

The Taylors claim that StrongBuilt and its successor SBI, manufactured and placed in the stream of commerce, a produce which was in a defective condition or in a condition that was unreasonably dangerous to Doug as the ultimate user or consumer as defined by the Alabama Extended Manufacturer's Doctrine (AEMLD).

In order to establish a claim under the AEMLD, the Taylors' must show that Douglas

(1) suffered injury or damage[ ] to himself or his property by one who sells a product in a defective condition unreasonably dangerous to the plaintiff as the ultimate user or consumer, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it [was] sold.

*Garrie v. Summit Treestands, LLC*, 50 So.3d 458, 465 (Ala. Civ. App. 2010) (internal quotations and citations omitted). The Supreme Court of Alabama has also explained as follows:

---

[6] In *Vesta Fire Ins. Corp. v. Milam & Co. Const., Inc.*, 901 So.2d 84, 102 (Ala. 2004), the Supreme Court of Alabama cited *Spain v. Brown & Williamson Tobacco Corp.*, 872 So.2d 101, 111 (Ala. 2003) and noted that in *Spain* the Court discussed "at some length the distinction between a breach-of-warranty claim under the Uniform Commercial Code and a claim under the AEMLD" and stated "that 'a claim alleging breach of an implied warranty of merchantability is separate and distinct from an AEMLD claim and is viable to redress an injury caused by an unreasonably dangerous product.'" The Court in *Vesta* also cited *Tillman v. R.J. Reynolds Tobacco Co.*, 871 So.2d 28, 35 (Ala. 2003), for its explanation that "[w]e will not presume to so define the boundaries of the judicially created AEMLD so that it subsumes the common-law tort actions of negligence and wantonness against the retailer defendants."

11

> In order to prove that a product is defective for purposes of the AEMLD, a plaintiff must prove that a safer, practical, alternative design was available to the manufacturer at the time it manufactured the [product]. The existence of a safer, practical, alternative design must be proved by showing that:
>
>> (a) The plaintiff's injuries would have been eliminated or in some way reduced by use of the alternative design; and that
>>
>> (b) taking into consideration such factors as the intended use of the [product], its styling, cost, and desirability, its safety aspects, the foreseeability of the particular accident, the likelihood of injury, and the probable seriousness of the injury if that accident occurred, the obviousness of the defect, and the manufacturer's ability to eliminate the defect, the utility of the alternative design outweighed the utility of the design actually used.

*Garrie*, 50 So. 3d at 466, citing *Hannah v. Gregg, Bland & Berry, Inc.*, 840 So.2d 839, 858 (Ala.2002) (internal citations and quotations omitted).

Additionally, "[i]n an AEMLD action, 'the plaintiff must affirmatively show that the product was sold with a defect or in a defective condition.' [ ] 'Without evidence to support the conclusion that the product was defective and/or unreasonably dangerous when it left the hands of the seller, the burden is not sustained.' [ ] 'Proof of an accident and injury is not in itself sufficient to establish liability under the AEMLD; a defect in the product must be affirmatively shown.'" *Garrie*, 50 So. 3d at 465, quoting *Tanksley v. ProSoft Automation, Inc.*, 982 So.2d 1046, 1051 (Ala. 2007) (internal quotations omitted).

Although the well-plead facts are deemed admitted by a defendant in default, the facts as plead must still form the basis of a claim for relief. However, the Taylors have failed to allege facts necessary to sustain an AEMLD claim. Therefore, upon default, the defendants could not admit such facts. *Tyco Fire & Sec., LLC,* 218 Fed. Appx. at 863 ("before entering a default judgment for damages, the district court must ensure that the well-pleaded allegations of the complaint ... actually state a cause of action and that there is a substantive, sufficient basis in the

pleadings for the particular relief sought.") Since proof of a safer, alternative design is an essential element under Alabama law, default judgment cannot be entered as to the Taylors' claims under the Alabama Extended Liability Doctrine. *See Gougler v. Sirius Products, Inc.*, 370 F.Supp.2d 1185, 1200 (S.D. Ala. 2005) (finding that there is "abundant Alabama authority that a plaintiff bringing an AEMLD design defect cause of action 'must prove that a safer, practical, alternative design was available to the manufacturer at the time it manufactured the product.'") (quoting *General Motors Corp. v. Jernigan*, 883 So.2d 646, 662 (Ala. 2003) (citing *Hannah v. Gregg, Bland & Berry, Inc.*, 840 So.2d 839, 858 (Ala.2002)); *Bagley v. Mazda Motor Corp.*, 864 So.2d 301, 312 (Ala.2003) (same); *Connally v. Sears, Roebuck & Co.*, 86 F.Supp.2d 1133, 1137 (S.D.Ala. 1999) (same).).

### C. Count Three - Negligence

The Taylors allege that StrongBuilt and SBI engaged in negligent conduct by marketing and manufacturing a defectively designed or defectively constructed fixed deer stand for use by the public and by Douglas. In order to establish a claim for negligence, the Taylors' must prove "(1) that the defendant owed the plaintiff a duty; (2) that the defendant breached that duty; (3) that the plaintiff suffered a loss or injury; and (4) that the defendant's breach was the actual and proximate cause of the plaintiff's loss or injury." *QORE, Inc. v. Bradford Bldg. Co.*, 25 So .3d 1116, 1123 (Ala. 2009) (quotation marks omitted).

After consideration of the factual allegations in the complaint, deemed admitted by the default, testimony as set forth in the record and documentary evidence, *see supra* Section A, the Court finds that there is sufficient evidence to establish that SBI and StrongBuilt breached their duty to provide a reasonably safe product that performed in the manner intended, to hold weight less than two hundred and fifty pounds, and were negligent. Therefore, liability is established as

to Count Three.

### D. Count Four - Wantonness

The Taylors allege that StrongBuilt and SBI engaged in wanton conduct by marketing and manufacturing a defectively designed or defectively constructed fixed deer stand for use by the public and by Douglas. "The Supreme Court has defined wantonness as the conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result." *Garrie*, 50 So. 3d at 469, quoting *Bozeman v. Central Bank of the South*, 646 So.2d 601, 603 (Ala. 1994) (citation omitted).

After consideration of the factual allegations in the complaint deemed admitted by the default, testimony as set forth in the record and documentary evidence, the Court finds that there is not sufficient evidence to establish that SBI and StrongBuilt acted wantonly with regard to the manufacture and marketing of a defective product. No evidence was presented that SBI and StrongBuilt were aware of conditions related to the fixed deer stand which would likely or probably result in injury to the users. Therefore, liability is not established as to Count Four. Accordingly, Douglas' claim for punitive damages is disallowed.

### D. Count Five - Loss of consortium

Tonya claims that as a result of SBI and StrongBuilt's breach of duty, failure to manufacture and market a reasonably safe product, negligence and wantonness, she has lost the consortium and society of her husband Douglas. She claims damages for loss of consortium and punitive damages for SBI and StrongBuilt's wanton conduct.

The Court has determined that the evidence is not sufficient to establish that SBI and StrongBuilt acted wantonly. Therefore, Tonya's claim for punitive damages is not allowed.

However, the Court has determined herein that the evidence is sufficient to establish that SBI and StrongBuilt breached their duty of an implied warranty of merchantability and fitness for a particular purpose and were negligent and thus are liable to the Taylors. Therefore, the Court must determine whether Tonya has presented a sufficient factual basis to support an award of damages for loss of consortium.

At the hearing, Tonya testified that Douglas could no longer participate in many of their social and family activities and specifically referenced his inability to maintain their yard and to coach or play sports with their children. Tonya also testified that the effect of Douglas' injuries and the daily medication which he must now take as a result of those injuries, interferes with their personal relationship. Upon consideration of the foregoing, and Tonya's hearing testimony as more fully set forth on the record, the Court finds that she has presented sufficient evidence to establish a factual basis for her claim for damages.

IV. Damages

The Court having granted the Taylors' motions for default judgment against defendants SBI and StrongBuilt, finds the evidence sufficient to hold defendants jointly and severally liable for the following damages:

| Douglas Taylor | Past medical expenses | |
|---|---|---|
| | 2005 through 2008 | $ 58,520.60 |
| | 2009 to August 2011 | $ 12,800.00 |
| | (32 months x $400.00) | |
| | Future medical expenses[7] | |

---

[7] The Court takes notice of the U.S. Census Bureau's Statistical Abstract of the United States which indicates that a male, forty years of age, would live an additional 37.8 years. U.S. Census Bureau, Statistical Abstract of the United States: 2011 (130th Edition) Washington, DC, 2010; <http://www.census.gov/statab/www/ (applying 2007 census data). No formula for
(Continued)

|  |  |  |
|---|---|---|
| | 37.8 years x $4,800.00 | $181,440.00 |
| | ($400.00 x 12 months | |
| | = $4,800.00 per year) | |
| Past lost wages | | $ 15,666.00 |
| Future lost wages | | $ 59,000.00 |
| | | $327,426.60 |
| Mental anguish, emotional distress, pain and suffering | + | $450,000.00 |
| Total compensatory damages | | $777,426.60 |
| Tonya Taylor - Loss of consortium | + | $100,000.00 |
| Total | | $977,426.60 |

V. Conclusion

Accordingly, plaintiffs' motions for default judgment are **GRANTED** and it is **ORDERED** that default judgment in the total amount of $977,426.60 be entered against the defendants StrongBuilt and SBI and in favor of plaintiffs Douglas and Tonya Taylor pursuant to Fed.R.Civ.P. 55(b)(2).

In accordance with Rule 58 of the Federal Rules of Civil Procedure, a separate final Default Judgment consistent with the terms of this order shall issue contemporaneously herewith.

DONE and ORDERED this 23rd day of September, 2011.

/s/ Kristi K. DuBose
KRISTI K. DuBOSE
UNITED STATES DISTRICT JUDGE

---

assessing the cost of inflation was applied.